UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KRISTAL SCOTT,

    Plaintiff,

v

CITY OF DETROIT,

    Defendant.

Civil Action No.:
Honorable

---

JAMES B. RASOR  (P 43476)
ANDREW J. LAURILA  (P 78880)
Rasor Law Firm, PLLC
Attorneys for Plaintiff
201 E. Fourth Street
Royal Oak, MI  48067
248/543-9000 // 248/543-9050 fax

---

## COMPLAINT & JURY DEMAND

NOW COMES PLAINTIFF, KRISTAL SCOTT, by and through her attorneys, Rasor Law Firm, PLLC, and for her Complaint against Defendant, CITY OF DETROIT, states as follows:

### GENERAL ALLEGATIONS

### Parties

1. At all relevant times, Plaintiff KRISTAL SCOTT ("Plaintiff"), was a resident of the City of Detroit, County of Wayne, State of Michigan.

2. Defendant CITY OF DETROIT ("COD") is a Michigan municipal corporation, duly organized and carrying on governmental functions, in City of Detroit, County of Wayne, State of Michigan, and is the body responsible for the

control and oversight of its departments, agencies and facilities including the Detroit Police Department.

3. Defendant COD, specifically but not limited to the Police Department, is both a "program or activity" receiving Federal assistance within the meaning of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a)-(b).

4. At all material times, Plaintiff was an employee of Defendant while working for the Detroit Police Department in the City of Detroit, County of Wayne, State of Michigan.

5. This lawsuit arises out of events occurring within the City of Detroit, County of Wayne, and State of Michigan.

## Jurisdiction and Venue

6. This cause of action involves violations of Plaintiff's civil rights, as secured by the United States and Michigan Constitutions, and is brought pursuant to the Rehabilitation Act, 29 U.S.C. § 794(a)-(b).

7. This Court has jurisdiction over the claims arising under federal law pursuant to 28 USC §§1331, 1343.

8. The amount in controversy exceeds $75,000, exclusive of costs, interest, and attorney fees, and jurisdiction is otherwise proper in this Court.

9. Venue is appropriate in this Court pursuant to 28 USC §1391(b), as this cause of action arises out of occurrences that took place within this District in

the County of Wayne and Defendant transacts and conducts business within this District.

## COMMON FACTUAL ALLEGATIONS

10. Plaintiff reasserts and re-alleges each and every allegation contained in paragraphs one through 9 of the General Allegations, as if fully set forth herein, paragraph by paragraph, word for word.

11. Plaintiff was employed by the Detroit Police Department beginning in 2004.

12. In 2013, Plaintiff suffered a torn meniscus, which the parties at the time disputed whether this was work or non-work related, her torn meniscus is applicable to this litigation only in that Plaintiff's subsequent physical limitations qualifies as a "disability" as will be discussed below.

13. Due to the injuries Plaintiff suffered relating to her legs and lower back, Plaintiff requested and was granted a restricted-duty assignment at Defendant's Gun Desk from approximately August 2012 until her forced retirement.

14. Defendant City of Detroit deemed Plaintiff's position at the gun desk an accommodation.

15. While Plaintiff's leg injuries affected her ability to run and ambulate, it generally had no prohibiting effects of her ability to perform her duties at the Gun Desk.

3

16. On August 3, 2017, the City Board of Trustees approved the City of Detroit Police Department's application for Plaintiff's Duty Disability Retirement, which would be effective on September 7, 2017.

17. Plaintiff subsequently appealed this decision, which was affirmed on March 1, 2018.

18. Beginning on or around the time of Detroit's bankruptcy in 2014, Detroit Mayor Michael Duggan set out to cut costs in any way the City could find.

19. In light of this overarching decision by Mayor Duggan, he enlisted Detroit Police Chief Craig to likewise find ways to cut costs in his department; the DPD maintains one of the largest budgets within the City of Detroit.

20. Chief Craig determined that it would be cheaper to forcibly retire officers who had been deemed "permanently disabled," despite whether they could perform the functions of either a police officer or of the assignment they were performing at that time.

21. In lieu of Mayor Duggan's instruction, Chief Craig issued a mandate that the DPD should hire as many full-duty, able-bodied officers as possible.

22. Implicit in this "mandate" was that the DPD would forcibly retire as many disabled officers as possible under the guise of the Collective Bargaining Agreement and/or other purported lawful considerations.

23. Based on this mandate from Chief Craig—a mandate collectively made with Mayor Duggan—DPD began forcibly retiring disabled officers, including Plaintiff.

24. Before determining to retire various disabled officers, including but not limited to Plaintiff, Defendant undertook no decision-making as to these known disabled officers' jobs, the officers' specific disabilities, or ability to perform functions of their positions or the extent of their perceived inability to perform certain essential functions.

25. Defendant's position was that it would retire any employee who it deemed "permanently disabled" if he/she could not perform even one of the 24 essential functions it deemed applicable to the job of police officer.

26. The crux of Defendant's decision here arose out of either a discriminatory animus or a patent misunderstanding of disability law: i.e. the City of Detroit does not have to accommodate any individual who suffered a "permanent disability."

27. Despite Defendant's discriminatory conduct, there are still unaccounted-for permanently disabled officers working for the DPD.

28. Chief Craig has admitted that this ultimate decision to forcibly retire these individuals arose out of his desire to eliminate restricted duty positions (and the disabled officers) and replace those disabled officers with allegedly cheaper civilians.

29. Chief Craig has admitted that although his purported basis for forcibly retiring these disabled officers was because it is less expensive, there was no financial reason the DPD could not have maintained the disabled officers and hire new officers.

30. The civilians that Defendant replaced the disabled officers with were less qualified than the retired officers/employees, and upon information and belief, appeared to be cheaper for Defendant to employ, particularly in the amount of benefits they receive.

31. Likewise, the civilians that Defendant replaced the disabled officers with could not perform any functions of the retired individuals as they were not sworn police officers.

32. Every officer who was on restricted duty and/or deemed "permanently disabled," including Plaintiff, had been put there as a reasonable accommodation for a disability and/or needed an accommodation.

33. Plaintiffs' monthly income pursuant to a pension—both duty and non-duty—is significantly lower than income earned as a police officer and the forced retirement imputed various limitations on earning capacity that would not have been present had Plaintiffs' not been discriminatorily forced to retire.

34. After Plaintiff was retired, she was specifically replaced by a civilian, who did not have police officer training or receive police officer benefits.

35. Upon information and belief, Defendant has since stopped pushing through these forced retirements through the retirement process given the amount of pending litigation that has resulted from the same.

36. In determining to retire these disabled officers, including Plaintiff, Chief Craig undertook no interactive process and did not even consider how much it would have cost to keep the disabled employees employed in their accommodation positions.

**COUNT I**
**VIOLATION OF 29 U.S.C § 794, *et seq.*, SECTION 504 OF THE REHABILITATION ACT – DISABILITY DISCRIMINATION AND FAILURE TO ACCOMMODATE –**
**AS TO DEFENDANT CITY OF DETROIT**

37. Plaintiff reasserts and re-alleges each and every allegation contained in paragraphs 1 through 36, as if fully set forth herein.

38. The purpose of the Rehabilitation Act is to ensure that no "qualified individual with a disability in the United States . . . shall, solely by reason of his or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a).

39. The claims under the Rehabilitation Act are brought against Defendant City of Detroit as an entity that receives federal funding, specifically but not limited to the Detroit Police Department, which includes Federal money pertaining to the hiring of officers and various other police functions.

40. Plaintiff is an "individual with a disability" within the meaning of the Rehabilitation Act, 29 U.S.C. § 705(a)-(b) given her leg injuries affect various major life activities as enumerated in the Statute, including but not limited to working, walking, lifting and bending and she was considered disabled by Defendant given it retired her based on her disability.

41. Defendant City of Detroit, specifically the Detroit Police Department, has received various forms of "federal assistance" within the meaning of 29 U.S.C. § 794(a).

42. The DOJ regulation implementing the Rehabilitation Act clarifies the requirements for Federal financial recipients, stating: "a recipient shall make reasonable accommodation to the known physical or mental limitations of an otherwise qualified handicapped applicant or employee unless the recipient can demonstrate, based on the individual assessment of the applicant or employee, that the accommodation would impose an undue hardship on the operation of its program or activity." 28 C.F.R. § 42.511(a).

43. A reasonable accommodation includes, among others, "job restructuring." 28 C.F.R. § 42.511(b).

44. Further, relevant Federal Rules and Regulations provides that "[n]o qualified handicapped person shall on the basis of handicap be subjected to discrimination under any program or activity receiving Federal financial assistance." 28 C.F.R. § 42.510(a)(1).

45. Defendant City of Detroit, specifically the Police Department, is required to "make all decisions concerning employment under any program or activity receiving Federal financial assistance in a manner which insures that discrimination on the basis of handicap does not occur and may not limit, segregate, or classify applicants or employees in any way that adversely affects their opportunities or status because of handicap." 28 C.F.R. § 42.510(a)(2).

46. An employer has a duty under relevant law to consider transferring a disabled employee who can no longer perform his/her old job even with accommodation to a new position within the [c]ompany for which that employee is otherwise qualified.

47. The applicable standards also require Defendant to engage in an interactive process "[t]o determine the appropriate reasonable accommodation [for a given employee]." 29 C.F.R. § 1630.2(o)(3).

48. The purpose of this interactive process is to "identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations."

49. Plaintiff was qualified for the position she was working at the Gun Desk and/or she could perform the position of police officer with or without the need for a reasonable accommodation.

50. Plaintiff requested multiple accommodations, including but not limited to minor job restructuring to mitigate her injuries.

51. Plaintiff's disabilities were unrelated to her ability to perform her duties.

52. Given Plaintiff was accommodated for a period of time and Defendant maintains a number of accommodation positions, Defendant did not proffer a legitimate basis for forcibly retiring her.

53. Defendant's failure to provide Plaintiff with a reasonable accommodation in lieu of her disability denied Plaintiff Defendants' services, benefits, activities, programs, or privileges as the access provided to non-disabled individuals.

54. Even though Defendant had available accommodations that were not unduly burdensome in any manner and had previously provided Plaintiff the same accommodation she sought (an assignment that fulfilled her accommodation needs), Defendant refused to accommodate Plaintiff's request for a reasonable accommodation and forced her to retire.

55. Upon information and belief, this denial and failure to provide comparable access to Defendant's services, benefits, activities, programs or privileges arose from Defendant's facially discriminatory policies, practices, and enforcement of the same. These policies are ongoing and continue to this date.

56. Upon information and belief, Defendant intentionally and willfully discriminated against and failed to accommodate disabled employees under the guise of its Collective Bargaining Agreement and City Charter.

57. Defendant violated the Rehabilitation Act by forcibly retiring Plaintiff based on her disability.

58. Defendant treated Plaintiff, because of her disabilities, more harshly than it treated similarly-situated, non-disabled employees for the same conduct.

59. Defendant's reason for retiring the restricted-duty officers was merely pretext to hire non-disabled, non-restricted employees who were civilians and allegedly cost significantly less to employ.

60. Defendant failed to make good faith efforts to establish and enforce policies to prevent illegal discrimination against its employees, including disability discrimination.

61. Police Chief Craig has admitted to making this determination, at the behest of Mayor Duggan, that necessarily involves federal disability law, yet Craig has received no training in the ADA and/or knowing generally what the law requires.

62. Defendant did not engage in any interactive process to attempt to accommodate Plaintiff, but instead made an unfounded, baseless, blanket determination to retire disabled employees, including but not limited to Plaintiff.

63. Upon information and belief, Defendant ultimately determined to forcibly retire these disabled officers, including but not limited to Plaintiff, based on "stereotypes, or unfounded fear" associated with employing disabled individuals. *School Bd of Nassau County, Fla v Arline,* 480 US 273, 287 (1987).

64. Defendant failed to properly train or otherwise inform its supervisors and employees concerning their duties and obligations under the civil rights laws, including the ADA and/or Rehabilitation Act.

65. As a proximate result of Defendant's violation of Plaintiff's rights under the Rehabilitation Act, Plaintiff has suffered, and continues to suffer, from discrimination, unequal treatment, exclusion from Defendants' programs, financial loss, loss of employment and promotional opportunities, loss of dignity, frustration, humiliation, emotional pain and suffering, anxiety, trauma, embarrassment, unnecessary loss of rights and privileges, including unnecessary disciplinary measures, and injury to her health.

66. Defendant's failure to comply with the Rehabilitation Act has resulted in harm to Plaintiff, and Defendants are liable to Plaintiff for these harms suffered.

67. Pursuant to Section 504 of the Rehabilitation Act, Defendant is liable to Plaintiff for all damages allowed under federal law. To the extent that the damages allowable and/or recoverable are deemed insufficient to fully compensate Plaintiff and/or to punish or deter the Defendants, this Court must order additional damages to be allowed so as to satisfy any and all such inadequacies.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter judgment in his favor and against Defendant including but not limited to compensatory damages in whatever amount she is found to be entitled, exemplary

damages commensurate with the wrong and Defendant's ability to pay, and an award of her fair and reasonable attorney fees, cost of litigation, and interest.

          RESPECTFULLY SUBMITTED:

          THE RASOR LAW FIRM

          /s/ *Andrew J. Laurila*
          James B. Rasor (P43476)
          Andrew J. Laurila (P78880)
          Attorneys for Plaintiffs
          201 E. Fourth Street
          Royal Oak, Michigan 48067-3846
          (248) 544-9300/(248) 543-9050 Fax
          jbr@rasorlawfirm.com
Dated: June 15, 2020          ajl@rasorlawfirm.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KRISTAL SCOTT,

    Plaintiff,

v

CITY OF DETROIT,

    Defendant.

Civil Action No.:
Honorable

---

JAMES B. RASOR  (P 43476)
ANDREW J. LAURILA  (P 78880)
Rasor Law Firm, PLLC
Attorneys for Plaintiff
201 E. Fourth Street
Royal Oak, MI  48067
248/543-9000 // 248/543-9050 fax

---

# JURY DEMAND

**NOW COMES** Plaintiff, KRISTAL SCOTT, by and through her attorneys, RASOR LAW FIRM, PLLC, and hereby demands a trial by jury in the above-captioned cause of action.

RESPECTFULLY SUBMITTED:

THE RASOR LAW FIRM

/s/ *Andrew J. Laurila*
James B. Rasor (P43476)
Andrew J. Laurila (P78880)
Attorneys for Plaintiffs
201 E. Fourth Street
Royal Oak, Michigan 48067-3846
(248) 544-9300/(248) 543-9050 Fax
jbr@rasorlawfirm.com
ajl@rasorlawfirm.com

Dated: June 15, 2020